**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO.** |
| | : | |
| v. | : | |
| | : | **VIOLATION:** |
| | : | **18 U.S.C. § 201(b)(1)(C), 2** |
| **PAMELA PORTER,** | : | **(Bribery)** |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant Pamela Porter agrees to admit guilt and enter a plea of guilty to Count One of the Information. In support of this plea, the parties submit this statement of offense. The following statement of offense is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States.

Count One charges Porter with Bribery, in violation of 18 U.S.C. § 201(b)(1)(C). Pursuant to Federal Rule of Criminal Procedure 11, the Government and Porter, with concurrence of her attorney, agree and stipulate as follows:

1.  The Correctional Treatment Facility ("CTF") is a correctional institution operated by the District of Columbia Department of Corrections ("DOC"). CTF is a specialized medium security penal institution that houses inmates requiring specialized medical treatment or treatment/monitoring related to substance dependencies. This includes federal detainees awaiting trial, pursuant to a contract with the Bureau of Prisons. The address of CTF is 1901 E Street SE, Washington, District of Columbia.

2.  From December 19, 2022, through September 23, 2024, H.B. was a case manager

employed by DOC to assist and manage inmates housed at CTF, to include Inmate-1. H.B. had an office at CTF located on the D1A men's housing unit that contained, among other things, a computer and office phone provided by DOC to H.B. for H.B.'s use in carrying out his assigned duties. H.B.'s duties and responsibilities included helping with the administrative pre-trial and trial needs of inmates, including logistics for contacting the attorneys and/or social workers of said inmates.

3. As a DOC employee, H.B.'s conduct was governed by the October 21, 2022, DOC Contraband Control policy, which indicates that trafficking contraband of any kind to inmates is strictly prohibited. The policy describes any illegal drug or controlled substance and any tobacco product as major contraband. Additionally, 18 U.S.C. 1791 makes it a crime to provide "prohibited objects" to an inmate of a prison and defines "prohibited objects" to include any controlled substance or "any object that threats the order, discipline, or security of a prison, or the life, health, or safety of any individual."

4. Inmate-1 had been detained at DOC since approximately July 2022. Inmate-1 had been housed at CTF in the D1A housing unit from approximately February 2023 until June 26, 2024, when Inmate-1 was transferred to CDF from CTF for disciplinary reasons due to the discovery of a contraband cellular phone.

5. Pamela Porter was a close confidant of Inmate-1 and spoke to him regularly on recorded telephone calls. Additionally, Pamela Porter spoke to Inmate-1 in unrecorded calls from H.B.'s office phone.

6. Beginning in February 2024, Inmate-1 agreed with H.B. and others, including Pamela Porter, to smuggle contraband into CTF in exchange for money. Specifically, Inmate-1 would direct Pamela Porter to send payments to H.B. over the peer-to-peer payment application CashApp. H.B. would then hide cigarettes he had purchased himself or controlled substances received from Inmate-

1's associates on his person and go through security at CTF. On two occasions, Pamela Porter brought contraband to H.B. to smuggle into CTF, in exchange for payment made to H.B. by Pamela Porter over CashApp. On one of those occasions, the contraband included strips obtained from another person. Once through security, Baylor would bring Inmate-1 to his office and provide him with the contraband. Inmate-1 would then distribute the contraband to other inmates at CTF in exchange for money. Throughout the scheme, Porter sent H.B. a total of $1,200, in exchange for smuggling contraband to Inmate-1.

        Respectfully Submitted

        Edward R. Martin, Jr.
        United States Attorney

BY:    */s/ Joshua Gold*
        Joshua A. Gold
        Assistant United States Attorney

## DEFENDANT BAYLOR'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea to the Information in this case, charging me with Bribery, in violation of 18 U.S.C. § 201(b)(1). I have discussed this proffer fully with my attorney, Michelle Bradford. I fully understand this proffer and I acknowledge its truthfulness, agree to it, and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 2/13/2025

*Pamela Porter*
Pamela Porter

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date:  2/25/2025

*Michelle Bradford*
Michelle Bradford, Esq.
Counsel for Defendant